**No. 21-16559**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SHANDHINI RAIDOO, M.D., M.P.H.; and
BLISS KANESHIRO, M.D., M.P.H.,
on behalf of themselves and their patients

Plaintiffs-Appellees,

v.

LEEVIN TAITANO CAMACHO, in his official capacity as Attorney General of
Guam, NATHANIEL BERG, M.D., in his official capacity as Chair of the Guam
Board of Medical Examiners, PHILIP FLORES, in his official capacity as Vice-
Chair of the Guam Board of Medical Examiners, ARANIA ADOLPHSON, M.D.,
ANNETTE DAVID, M.D., M.P.H., ANNIE BORDALLO, M.D., LUIS CRUZ,
M.D., and SCOTT SHAY, M.D., in their official capacities as members of the
Guam Board of Medical Examiners,

Defendants-Appellants.

On Appeal from the United States District Court of Guam
No. 1:21-cv-00009
Hon. Frances Tydingco-Gatewood

## APPELLANTS' REPLY BRIEF

**LEEVIN TAITANO CAMACHO**
ATTORNEY GENERAL OF GUAM

**JAMES L. CANTO II**
Deputy Attorney General

**JORDAN LAWRENCE PAULUHN**
Assistant Attorney General
Office of the Attorney General
Litigation Division
590 S. Marine Corps Drive, Suite 802
Tamuning, Guam 96913
(671) 475-3324

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................... ii

TABLE OF AUTHORITIES .............................................. iii

ARGUMENT IN REPLY ...................................................... 1

    A. Guam's in-person informed consent requirement is rational and a well-established practice ............................................. 4

    B. Plaintiffs plainly misconstrue the statute at issue, because it does not prohibit them from doing anything ....................................... 9

    C. The Plaintiffs seek relief from the federal courts, when only a local legislative remedy is available ..................................... 18

    D. The Guam law is a rational regulation that is not grounded in any form of illegal and impermissible bias ........................................ 23

    E. In the event this court does not reverse the preliminary injunction outright, Plaintiffs admission that the "undue burden" standard no longer applies warrants reversal and remand for reconsideration in light of *Dobbs* .................................. 26

CONCLUSION ..................................................................... 26

CERTIFICATE OF SERVICE ....................................... 28

CERTIFICATE OF COMPLIANCE ......................................... Form 8

# TABLE OF AUTHORITIES

**Cases**                                                  **Page(s)**

*A Woman's Choice-East Side Women's Clinic v. Newman*,
305 F.3d 684 (7th Cir. 2002) ............................................................6, 7, 8, 22

*Am. Dredging Co. v. Miller*,
510 U.S. 443 (1994).......................................................................................21

*Cincinnati Women's Servs., Inc. v. Taft*,
468 F.3d 361 (6th Cir. 2006) ...........................................................................6

*City of Akron v. Akron Center for Reproductive Health, Inc.*,
462 U.S. 416 (1983).........................................................................................4

*City of New Orleans v. Dukes*,
427 U.S. 297 (1976).......................................................................................20

*Clinic for Women, Inc. v. Brizzi*,
837 N.E.2d 973 (Ind. 2005) .............................................................................7

*Dandridge v. Williams*,
397 U.S. 471 (1970).................................................................................17, 18

*Dobbs v. Jackson Women's Health Org.*,
142 S.Ct. 2228 (2022)............................................................................*passim*

*Food & Drug Admin. v. Am. College of Obstetricians & Gynecologists*,
141 S.Ct. 578 (2021).........................................................................................6

*Georgia v. Randolph*,
547 U.S. 103 (2006).......................................................................................22

*Gonzales v. Carhart*,
550 U.S. 124 (2007).............................................................................1, 18, 19

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)......................................................................................21

*H.L. v. Matheson*,
    450 U.S. 398 (1981)......................................................................................20

*Heller v. Doe*,
    509 U.S. 312 (1993)......................................................................................17

*In re Vioxx Prods. Liability Litigation*,
    439 F.Supp.2d 640 (E.D. La. 2006) ............................................................21

*June Medical Services L.L.C. v. Russo*,
    591 U.S. ___, 140 S.Ct. 2103 (2020) .........................................................13

*Marshall v. United States*,
    414 U.S. 417 (1974)......................................................................................20

*Maryland v. Craig*,
    497 U.S. 836 (1990)......................................................................................21

*Metropolis Theatre Co. v. Chicago*,
    228 U.S. 61 (1913)........................................................................................18

*Planned Parenthood Ariz., Inc. v. Humble*,
    753 F.3d 905 (9th Cir. 2014) ....................................................................3, 7

*Planned Parenthood of Central Mo. v. Danforth*,
    428 U.S. 52 (1976)..........................................................................................5

*Planned Parenthood of Se. Penn. v. Casey*,
    505 U.S. 833 (1992).................................................................................*passim*

*Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*,
    975 N.W.2d 710 (Iowa 2022).........................................................................7

*Planned Parenthood of Wisconsin, Inc. v. Van Hollen*,
  738 F.3d 786 (7th Cir.2013) ............................................................7

*Planned Parenthood Sw. Ohio Region v. DeWine*,
  696 F.3d 490 (6th Cir. 2012) ...........................................................6

*Roe v. Wade*,
  410 U.S. 113 (1973)..........................................................2, 25, 26

*S. Bay United Pentecostal Church v. Newsom*,
  140 S.Ct. 1613 (2020)......................................................................6

*Silveira v. Lockyer*,
  312 F.3d 1052 (9th Cir. 2002) ......................................................17

*Simopoulos v. Virginia*,
  462 U.S. 506 (1983)..........................................................................5

*Terrell v. United States*,
  564 F.3d 442 (6th Cir. 2009) ..................................................22, 25

*Thornburgh v. Am. College of Obstetricians & Gynecologists*,
  476 U.S. 747 (1986)..........................................................................1

*United States v. Hanson*,
  40 F.4th 1049 (9th Cir. 2022) ........................................................13

*Whole Woman's Health Alliance v. Rokita*,
  13 F.4th 595 (7th Cir. 2021) ......................................................4, 6

*Williams v. Morgan*,
  478 F.3d 1316 (11th Cir. 2007) .....................................................20

**Statutes**                                                    **Page(s)**

10 GCA § 3218.1 .........................................................1, 10, 11
10 GCA § 122526 ...............................................................24

21 U.S.C. § 802(54)(D)..........................................................25
21 U.S.C. § 829(e)(2)(A)(i) ...................................................25
A.C.A. § 20-16-2503..............................................................8
A.R.S. § 36-2153.....................................................................8
Iowa, I.C.A. § 146A.1..............................................................8
KRS §§ 311.724, 311.728.........................................................8
LSA-R.S. 40:1061.17...............................................................8
Miss. Code Ann. § 41-41-33....................................................8
Mo. Rev. Stat. 188.027.............................................................8
Ohio R.C. §2317.56..................................................................8
SDCL § 34-23A-10.1................................................................8
T.C.A. § 39-15-202...................................................................8
Tex. Health & Safety Code § 171.012......................................8
U.C.A. § 76-7-305.....................................................................8
W.S.A 253.10.............................................................................8
West's F.S.A. § 390.0111 ..........................................................8

**Other Authorities**                                       **Page(s)**

Guam P.L. 31-235 (Nov. 1, 2012) ..............................1, 2, 23

# ARGUMENT IN REPLY

"The State has an interest in ensuring so grave a choice [as abortion] is well informed." *Gonzales v. Carhart*, 550 U.S. 124, 159 (2007). "Whether to have an abortion requires a difficult and painful decision." *Id.* And, in assessing the reasonableness of abortion regulations, people and patients often have their "own value preferences." *Thornburgh v. Am. College of Obstetricians & Gynecologists*, 476 U.S. 747, 781 (1986) (Stevens, J., *concurring*). This case is not about barring a patient from making the ultimate decision whether to obtain an abortion, rather, it involves a challenge to Guam's in-person informed consent or counseling statute—a statute that is strikingly and conspicuously almost identical to the statute upheld in *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833 (1992).

The Guam statute at issue was passed in 2012 by a bipartisan, gender-diverse supermajority of the Guam Legislature. The provision at issue is a modest requisite that calls for a doctor performing an abortion to provide an in-person informed consent counseling session to the patient, either personally or through another qualified person, at least 24 hours before the abortion procedure or event. *See* Guam P.L. 31-235 (codified at 10 GCA § 3218.1). Plaintiffs would have this court believe that, in passing this law, Guam's duly-elected representatives are a group of "irrational, arbitrary, and discriminatory" individuals, Appellee's Br. at 26, and the Attorney General's defense of the law is concerned with nothing more

than calling patients faced with "profound moral questions" to "the principal's office," Appellee's Br. at 44. To the contrary, the Guam law is a reasonable regulation to ensure that a patient "receives complete and accurate information material to her decision of whether to undergo an abortion." Guam P.L. 31-235 § 1. As the Supreme Court has repeatedly stressed, abortion stands as unique among medical procedures because in addition to treating the patient, it also involves "potential life" and the "State's profound interest" therein. *See Casey*, 505 U.S. at 878; *see also Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2260-61 (2022); *Roe v. Wade*, 410 U.S. 113, 162 (1973) (acknowledging the state's "important and legitimate interest in protecting the potentiality of human life."). The Guam Legislature established an *in-person* consultation requirement to further legitimate state interests in, among other things, the promotion of fetal life, protection of maternal health, regulation of the medical profession, and maintenance of societal ethics—all legitimate state interests affirmed by *Dobbs*, 142 S.Ct. at 2284. An in-person setting for the statutorily-mandated informed consent counseling is rationally related to these interests and ensures that a patient obtains the relevant information in an individual and solemn setting that is free from distractions and outside influences. Appellant's Opening Br. at 10.

      In their Response Brief, Plaintiffs admit that *Dobbs* mandates rational basis review and that "the analysis conducted by the District Court is no longer

applicable." Appellee's Br. at 1. Yet, Plaintiffs still largely rely on the "harms" to their medical practices, claiming the law prohibits them from providing informed consent. Appellee's Br. at 55-58. This is no more than a disguised appeal to *Roe* and *Casey*'s balancing test—*i.e.*, to weigh the laws intended benefits against the burdens or harms to their medical practices. *See Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 912-13 (9th Cir. 2014) (discussing the 'rationality' of abortion regulations while applying the undue burden test). However, as the Constitution no longer "confer[s] a right to abortion," *Dobbs*, 142 S.Ct. at 2279, the Plaintiffs have not identified a constitutionally-protected right that is "harmed." Despite this, plaintiffs contend that the Guam law *prohibits* them from obtaining informed consent from their patients. The law does no such thing. Plaintiffs are free to obtain a separate (or even different) informed consent from their patient via telemedicine to satisfy their professional obligations or personal approaches to patient interaction and care. However, Plaintiffs must also ensure that the patient has received in-person counseling from themselves or another qualified person, consistent with Guam law. These obligations are not mutually exclusive and impose no prohibition on Plaintiffs.

The Guam law passes judicial review under any standard—either under *Casey* or post-*Dobbs*. Based on Plaintiffs' concession that they are only challenging the in-person requirement, the primary question before the Court is:

whether the legislature could rationally conclude that videoconferencing consultation was inferior in any way to in-person consultation. Even for physicians who choose not to live in Guam, the answer is undoubtedly and self-evidently "yes." Plaintiffs persist in seeking a judicial remedy where the U.S. Supreme Court has made clear only a legislative one exists. *Dobbs*, 142 S.Ct. at 2279 ("[T]he authority to regulate abortion must be returned to the people and their elected representatives.").

## A. Guam's in-person informed consent requirement is rational and a well-established practice.

Guam's informed consent statute stems from a well-accepted and previously-approved scheme. "The requirement of in-person counseling . . . is a return litigant." *Whole Woman's Health Alliance v. Rokita*, 13 F.4th 595, 598 (7th Cir. 2021). In-person requirements were part of the scheme approved of in *Casey*'s joint opinion, stemming from Justice O'Connor's views articulated in her dissent in *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416 (1983).

In *City of Akron*, Justice O'Connor would have found that a hospitalization requirement—the epitome of in-person attendance—for abortion procedures would have passed review under *Roe*'s "unduly burdensome" standard. 462 U.S. at 466-67. While the majority in *City of Akron* ultimately struck down the hospitalization requirement, the same Court—in a companion case decided the same day as *City of*

*Akron*—did uphold a statute requiring that abortions be performed in a licensed clinic. *See Simopoulos v. Virginia*, 462 U.S. 506 (1983). This also follows the post-*Roe* cases upholding written consent requirements by women undergoing an abortion. *Planned Parenthood of Central Mo. v. Danforth*, 428 U.S. 52, 65-67 (1976).

Less than a decade after *City of Akron*, Justice O'Connor, along with Justices Kennedy and Souter, authored the joint opinion in *Casey* that overruled *City of Akron*. Thus, even the post-*Casey* Court would have approved of requiring hospitalization—the most onerous of in-person requirements. The joint opinion in *Casey* upheld a law almost identical to Guam's statute at issue and approved of an in-person counseling requirement. *Casey*, 505 U.S. at 885-86 (". . . the waiting period requires that a woman seeking an abortion make at least two visits to the doctor."). Even Chief Justice Rehnquist's partial concurrence and partial dissent explicitly recognizes that the Pennsylvania statute compelling pre-abortion counseling comported with the fact that, as of 1992, "most clinics already require that a counselor consult in person with the woman about alternatives to abortion before the abortion is performed." *Casey*, 505 U.S.at 968 (Rehnquist, C.J., *concurring in part and dissenting in part*).

Further, an in-person consultation requirement for prescribing abortion-inducing medication (specifically, mifepristone) was left in place by the U.S.

5

Supreme Court despite as-applied challenges stemming from the COVID-19 pandemic. *See Food & Drug Admin. v. Am. College of Obstetricians & Gynecologists*, 141 S.Ct. 578 (2021). In concurring with the stay, which left the FDA's then-effective in-person requirement in place, Chief Justice Roberts stated that "that courts owe significant deference to the politically accountable entities with the 'background, competence, and expertise to assess public health.'" *Id.* at 579 (quoting *S. Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1614 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief).

Thus, the precise requirement that Plaintiffs claim is irrational has previously been upheld by the Supreme Court on preliminary review. *Food & Drug Admin.*, 141 S.Ct. at 578. Indeed, several other appellate courts have recognized the legal validity of in-person requirements. The Seventh Circuit has consistently upheld in-person counseling requirements, observing that *Casey* established the constitutionality of such laws and is controlling on the issue. *See Rokita*, 13 F.4th at 598; *A Woman's Choice-East Side Women's Clinic v. Newman*, 305 F.3d 684, 703 (7th Cir. 2002). Similarly, the Sixth Circuit has also upheld an in-person informed consent requirement under the pre-*Dobbs* framework. *See Cincinnati Women's Servs., Inc. v. Taft*, 468 F.3d 361, 372-74 (6th Cir. 2006); *see also Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 517 (6th Cir. 2012) (acknowledging that *Casey* found an "onerous" in-person informed-consent

6

impediment was not an undue burden) (McKeague, J., concurring in part and writing the majority as to Part VI). This too is in agreement with the Indiana Supreme Court, which considered both undue burden and rational basis challenges to Indiana's in-person consultation requirement. *See Clinic for Women, Inc. v. Brizzi*, 837 N.E.2d 973 (Ind. 2005). The majority found that the in-person requirement did not impose an undue burden, either facially or as applied, *Brizzi*, 837 N.E.2d at 978-88 (Rucker, J.) and a concurring opinion would have further held that the in-person requirement passed rational basis review under the Indiana Constitution, 837 N.E.2d at 991-92 (Dickson, J., *concurring*). Recently, the Iowa Supreme Court found, under state law, that a statute requiring an in-person visit 24 hours before an abortion to obtain an ultrasound did not implicate a fundamental right under the state constitution. *See Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, 975 N.W.2d 710, 715 (Iowa 2022).

The Seventh Circuit's opinions in *Newman* and *Rokita* are particularly important, because this Court explicitly aligned itself with the Seventh Circuit's *Casey*-era approach to analyzing abortion regulations. *Humble*, 753 F.3d at 913-14 ("In *Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786 (7th Cir.2013), the Seventh Circuit adopted an approach much like ours . . . ."). At the time of both *Humble* and *Van Hollen*, the opinion in *Newman* was controlling in the Seventh Circuit. The court in *Newman* explicitly approved of an Indiana statute

with almost identical requirements to Guam's law—including an in-person informed consent requirement. *See Newman*, 305 F.3d at 685-87.

The in-person informed consent requirement is also not unique to Guam. Even according to a summary prepared by the Guttmacher Institute, 28 states have a specific statutory informed consent requirement for abortion and 4 states have customary informed consent provisions. *See* Guttmacher Institute, *Counseling and Waiting Periods for Abortion* (Nov. 1, 2022), *available at* https://www.guttmacher.org/state-policy/explore/counseling-and-waiting-periods-abortion. Among these states, at least 15 require that counseling be provided in person prior to the commencement of a waiting period.[1] *Id.*

The case history and Guam law's consistency with modern practice make clear that Guam's in-person informed consent requirement passes rational basis review under either the *Casey* or the *Dobbs* framework. Guam's requirement is almost identical to the statute upheld in *Casey*, and Plaintiffs have not asserted anything different. Further, because the more lenient post-*Dobbs* analysis now applies, there is no reason to continue subjecting Guam to a federal injunction.

---

[1] These states include: Arizona, A.R.S. § 36-2153; Arkansas, A.C.A. § 20-16-2503; Florida, West's F.S.A. § 390.0111; Indiana, IC 16-34-2-1, IC 16-34-2-1.1; Iowa, I.C.A. § 146A.1; Kentucky, KRS §§ 311.724, 311.728; Louisiana, LSA-R.S. 40:1061.17; Mississippi, Miss. Code Ann. § 41-41-33; Missouri, Mo. Rev. Stat. 188.027; Ohio, Ohio R.C. §2317.56; South Dakota, SDCL § 34-23A-10.1; Texas, Tex. Health & Safety Code § 171.012; Tennessee, T.C.A. § 39-15-202; Utah, U.C.A. § 76-7-305; Wisconsin, W.S.A 253.10.

**B. Plaintiffs plainly misconstrue the statute at issue, because it does not prohibit them from doing anything.**

Plaintiffs claim "the only way for Plaintiffs to obtain informed consent from their patients in Guam is the same way they provide the care itself: via a live, face-to-face videoconference." Appellee's Br. at 3. They further complain that, as applied, the informed consent requirement "makes it impossible for the sole physicians who provide this particular medical service to people in Guam to obtain legally valid informed consent from their own patients." Appellee's Brief at 3; *see also* Appellee's Br. at 24, 25, 50.

In this appeal, Plaintiffs claim that the law curtails their own liberty interests. Because they choose to live in Hawaii—the argument goes—Guam law infringes on their rights because they must either come to Guam personally or associate with another "qualified person" to comply with statutory informed consent requirement.

However, nowhere in their argument do Plaintiffs articulate or otherwise identify a constitutionally protected liberty interest. Plaintiffs also confuse "informed consent for the underlying medical care," Appellee's Br. at 25, with the statutorily-mandated information applicable to abortions generally. Ultimately, Plaintiffs claim they are prevented from providing medical advice to their own patients. This claim can only be made because Plaintiffs completely misapprehend the law.

9

The statute does not state that doctors cannot provide their patients with whatever medical diagnosis, prognosis, assessment, recommendation, opinion, or other (even non-medical) advice they want to provide. The Guam law does not prohibit doctors from doing anything. Yet, Plaintiffs would have this court believe the law expressly forbids them from consulting with their patients to obtain their informed consent. The statute merely ensures that certain select information is shared with the patient about the abortion method and its risks, the probable gestational age and physiological characteristics of the fetus, and the availability of medical financial assistance, public assistance and insurance, adoption services, and paternal child support. *See* 10 GCA § 3218.1(b)(1)-(2). Thus, the claim that the Guam law "prevents" Plaintiffs from being able to "provide informed consent for the underlying medical care" is fully unsupported. Appellee's Br. at 25.

*First*, even as applied, the law does not prevent the Plaintiffs from doing anything themselves. In fact, according to their own declarations and brief, they are willing to fly "out to Guam periodically to provide abortion and other gynecological services." SER-98-99 (Kaneshiro Decl. ¶ 81); SER-123 (Raidoo Decl. ¶ 78); Appellee's Br. at 13. Thus, there is no absolute barrier to the Plaintiffs personally conducting the statutory informed consent session in the presence of their patients.

*Second*, Guam law does not require the physicians to personally travel to

10

Guam. Plaintiffs are free to associate with one of several types of on-island providers to satisfy the statutory in-person informed consent requirement. 10 GCA § 3218.1(a)(13). Plaintiffs also attest they "are aware of multiple supportive physicians in Guam who are willing to provide pre- and post-abortion testing and care to abortion patients." SER-98-99 (Kaneshiro Decl. ¶ 81); SER-123 (Raidoo Decl. ¶ 78). Indeed, according to Plaintiffs, they "already have professional relationships with OB/GYNS in Guam." SER-98 (Kaneshiro Decl. ¶ 80); SER-123 (Kaneshiro Decl. ¶ 77). The in-person informed consent session is a pre-abortion service. Plaintiffs have not established that they cannot associate with one of these already identified physicians or any other type of qualified person. Because Plaintiffs may associate with another "qualified person," Guam law already accommodates any real or perceived inability of the Plaintiffs to personally travel to Guam. Plaintiffs cannot credibly claim that the in-person informed consent requirement "prohibits" them from doing anything.

Further, Plaintiffs concede that it is often necessary for a medical provider (ostensibly in the form of Plaintiffs' agent, if not Plaintiffs themselves) to be in the presence of their Guam abortion patients anyway. *See* ER-96 (Compl. ¶ 169.b. ("Any necessary exams, ultrasounds, and lab tests will be performed at medical facilities near the patient rather than at the [medication] abortion provider's office."), ¶¶ 178-79); SER-53 (Washington Decl. ¶ 36) ("Thus, it is important to

11

understand that the use of telemedicine does not preclude the reliance on certain in-person tests, *i.e.*, ultrasounds or blood tests, to assess a person's eligibility for medication abortion."); SER-72 (Washington Decl. ¶ 90) ("A patient's eligibility can be determined with ultrasounds and lab results obtained locally. . ."); *see also* SER-76 (Washington Decl. ¶¶ 99-102) (patients' follow-up care "can be safely and effectively managed by either medical staff in an emergency room at any hospital in Guam or by any local clinician in Guam who provides obstetrical and/or gynecological care"); SER-117-18 (Raidoo Decl. ¶ 55); SER-92 (Kaneshiro Decl. ¶ 56). Thus, the alleged "barriers" to Plaintiffs' patient-care are non-existent.

*Third*, Plaintiffs are free to choose the "qualified person" themselves. While Plaintiffs set up hypotheticals about cardiologists, social workers, and pediatricians, Appellee's Br. at 40, 44, they are still maintaining only an *as-applied* challenge. Plaintiffs nonetheless are free to select their own agent to provide the statutorily-mandated information and material—they are not bound to the types of professionals listed in their theoretical situations. They can choose one of the "multiple supportive physicians" already capable of providing pre-abortion care. Further, and more notably, Plaintiffs explicitly do not challenge the content of the Guam law. Appellee's Br. at 51. As such, Plaintiffs' concern about whether non-abortion provider "qualified persons" can adequately deliver the statutory informed consent counseling lacks merit.

*Fourth*, Plaintiffs are free to provide their own separate informed consent counseling. The statutorily-required session is applicable to all abortions, while a physician may also want to note unique aspects of a particular procedure, medication, or patient. A physician may also wish to review or reinforce any or all of the information also shared in-person. Plaintiffs assert that this somehow still results in harm to them and their professional services. Yet, tellingly, Plaintiffs also state they "are not arguing the in-person requirement causes irreparable harm because it will force them to stop providing abortions altogether."[2] Appellee's Br.

_____

[2] At page 30 footnote 12, Plaintiffs devote most of a page to a footnote elaborating an argument that does not need to be decided in this appeal—whether they should be permitted to assert the rights of patients in a different jurisdiction from them who are contemplating terminating their pregnancies and who may be inconvenienced because they have to meet them or their agents in person before they make a final decision. Before *Dobbs*, the Supreme Court "long permitted abortion providers to invoke the rights of their actual or potential patients in challenges to abortion-related regulations." *June Medical Services L.L.C. v. Russo*, 591 U.S. ___, ____,140 S.Ct. 2103, 2118 (2020) (citing cases), abrogated by *Dobbs*, 142 S.Ct. 2228.

But again—like the District Court's injunction—that was before *Dobbs*. Allowing doctors to assert third-party claims on behalf of patients in abortion cases may no longer be as readily assumed. *See Dobbs*, 142 S.Ct. at 2275-76 ("*Roe* and *Casey* have led to the distortion of many important but unrelated legal doctrines, . . . The Court's abortion cases have diluted the strict standard for facial challenges . . . [and] ignored the Court's third-party standing doctrine . . ."); *United States v. Hanson*, 40 F.4th 1049, 1072 (9th Cir. 2022) ("Just recently, the Court has reasserted its preference for a 'strict standard for facial constitutional challenges' and has eschewed the dilution of the 'third-party standing doctrine.'") (Bumatay, J., *dissenting from the denial of rehearing en banc*) (quoting *Dobbs*, 142 S.Ct. at 2275).

at 57 n.20. Plaintiffs have simply failed to articulate or identify any actual irreparable harm.

*Fifth*, Plaintiffs have not identified a constitutionally protected interest. The Constitution no longer "confer[s] a right to abortion," *Dobbs*, 142 S.Ct. at 2279. Since a state may "prohibit" abortion, *Dobbs*, 142 S.Ct. at 2284, there is also no constitutional right to perform an abortion. Plaintiffs persist in raising a constitutional challenge to a law that simply no longer has any constitutional implications. As even *Casey* made clear, it is entirely constitutional for Guam to seek to ensure a woman's choice is informed, and to attempt to persuade her to choose an alternative to abortion, in order to advance the legitimate state interest in promoting fetal life.

> To promote the State's profound interest in potential life, throughout pregnancy the State may take measures to ensure that the woman's choice is informed, and measures designed to advance this interest will not be invalidated as long as their purpose is to *persuade* the woman to choose childbirth over abortion.

*Casey*, 505 U.S. at 878 (emphasis added).

───────────────────

Due to Plaintiffs asserted personal harm, though, this injunction may be decided on the merits. Additionally, far from having "waived" a challenge to third-party standing, Defendants recognize that Plaintiffs have framed this case as imposing harms personally on them and their practice. Indeed, their brief asserts claims based on what the law purportedly "prohibits" them from doing. As they allege personal harm, at least superficially, they pass the low bar standard for standing. However, once the injunction related to the alleged "prohibition" on Plaintiff-physicians is resolved consistent with *Dobbs*, the Defendants will be able to fully raise the lack of third-party standing on behalf of the patients and dispose of "derivative" claims on remand.

> [W]e permit a State to further its legitimate goal of protecting the life of the unborn by enacting legislation aimed at ensuring a decision that is mature and informed, even when in so doing the State expresses a preference for childbirth over abortion. In short, requiring that the woman be informed of the availability of information relating to fetal development and the assistance available should she decide to carry the pregnancy to full term is a reasonable measure to ensure an informed choice, one which might cause the woman to choose childbirth over abortion. This requirement cannot be considered a substantial obstacle to obtaining an abortion, and, it follows, there is no undue burden.

*Casey*, 505 U.S. at 883. The state is free to "show its concern for the life of the unborn." *Id.* at 869. And when *Dobbs* overruled *Casey*, there was no longer any constitutionally protected right to an abortion to "weigh" these legitimate state interests against.

*Sixth*, Plaintiffs focus almost exclusively on analyzing the state's legitimate interest in regulating the *medical* procedure. They simply ignore all of the other valid state interests—particularly the preservation and promotion of fetal life. Initially, Plaintiffs' claim fails because there is a medical purpose. In the District Court, Plaintiffs claimed that the in-person informed consent session results in a "completely unnecessary trip to the health care provider" and "serves no medical purpose." SER-102 (Kaneshiro Decl. ¶ 91); SER-126 (Raidoo Decl. ¶ 87). However, Plaintiffs also acknowledge that "Ensuring patient consent is well-informed is a foundational aspect of medical ethics." SER-4 (Nichols Decl. ¶ 4). Plaintiffs' argument further fails because they do not address the other state

interests. There is not a single reference or piece of evidence submitted by the Plaintiffs addressing how they believe that the informed consent requirement does not help better impart the state's interest in preserving and promoting fetal life.

Guam's in-person information requirement is reasonably related to Guam's legitimate state interest in promoting fetal life. "[A] State is permitted to enact *persuasive measures* which favor childbirth over abortion, even if those measures do not further a health interest." *Casey*, 505 U.S. at 886 (emphasis added). An in-person meeting is designed to make the most impactful impression possible, and to impart the personalized and important nature of the decision for the woman's deliberation over the next 24 hours before the procedure.

On this point, Plaintiffs incorrectly claim that the Defendants maintain "the Informed Consent Law does not actually reduce the number of abortions." Appellee's Br. at 45 n.16. The portion of the Appellant's Brief being quoted was referring to findings recommended by the magistrate judge. Appellants' Br. at 31. However, the statistics in this regard are incomplete correlations and easily manipulated to serve any side's cause. While the raw number of abortions remained relatively consistent in the years Guam had an on-island abortion provider, *see* Appellee's Br. at 45 n.16, the statistics do not capture the number of patients undergoing the informed consent counseling and then choosing not to have an abortion. The numbers further cannot reflect the number of women who may

16

have consulted the statute and state material on their own and chose not to even begin the abortion process. To be sure, since the District Court enjoined the in-person requirement, there has likely been an increase in the number of abortions. While Plaintiffs may argue this is related to the re-availability of abortion services in Guam, Defendants could contend that the in-person requirement worked as a persuasive measure because abortions increased after it was enjoined. The point, here, is that without statistics that Plaintiffs do not have and are nearly impossible to obtain, there is almost no way to *empirically* test how well the in-person requirement serves the legitimate state interests.

Further, it is not the judiciary's job to perform a post-hoc evaluation, like this, of the effectiveness of laws when determining constitutionality. Even Plaintiffs acknowledge that the court's scrutiny focuses on the "goal of a legislative act," Appellee's Br. at 23 (citing *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002)). And, as the Defendants' have pointed out in their opening brief, the court must accept the legislatures generalizations and does not scientifically weigh the results of the law. Appellant's Br. at 22. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (cleaned up); *Heller v. Doe*, 509 U.S. 312, 321 (1993) ("courts are

17

compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."). "'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.'" *Dandridge*, 397 U.S. at 485 (quoting *Metro. Theatre Co. v. Chicago*, 228 U.S. 61, 69-70 (1913)).

*In the end*, the Plaintiffs have not demonstrated that the law imposes some irreparable harm upon them. Even from the record, it is clear the Plaintiffs can comply with the in-person requirement. They simply do not want to comply and wish to engage in wholly remote abortion services, personally dictating the full extent of government policy. However, "[t]he law need not give abortion doctors unfettered choice in the course of their medical practice." *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007). Plaintiffs attempt to skew the constitutional analysis to characterize the law's requirement as a restriction of their liberty interests merely because it does not hyperextend itself to serve their personal preferences and particular business concerns.

### C. The Plaintiffs seek relief from the federal courts, when only a local legislative remedy is available.

In *Dobbs*, the U.S. Supreme Court stated: "The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion. *Roe* and *Casey* arrogated that authority. We now overrule those decisions and return that authority to the people and their elected representatives." 142 S.Ct. at 2284.

Instead of seeking a remedy through legislative change, Plaintiffs resort to asking a federal court to enjoin a presumptively valid local law.

"States may regulate abortion for legitimate reasons, and when such regulations are challenged under the Constitution, courts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies." *Dobbs*, 142 S.Ct. at 2283-2284. "A law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.' [ ] It must be sustained if there is a rational basis on which the legislature could have thought it would serve legitimate state interests. . . . These legitimate interests include respect for and preservation of prenatal life at all stages of development." *Id*. at 2284 (citations omitted).

> With respect to fetal life, the Court stated:

> Regulations which do no more than create a structural mechanism by which the State . . . may express profound respect for the life of the unborn are permitted, . . . a state measure designed to persuade her to choose childbirth over abortion will be upheld if reasonably related to that goal.

*Casey*, 505 U.S. at 877-878; *Gonzales*, 550 U.S. at 157.

*Dobbs* made clear that the Constitution "unequivocally" leaves it to the people and their elected representatives to address questions of "profound moral and social importance," such as how to regulate abortion. *Dobbs*, 142 S.Ct. at 2265. Even if this court is unclear on the importance—or even strict necessity—of the in-person requirement, it is not empowered to hold the law unconstitutional.

"[I]n areas fraught with medical and scientific uncertainties," courts should defer to the legislature's power to select its policy from the broad array of options. *Dobbs*, 142 S.Ct. at 2268 (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)). "The Constitution does not compel a state to fine-tune its statutes so as to encourage or facilitate abortions." *H.L. v. Matheson*, 450 U.S. 398, 413 (1981).

"[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Courts do not "invalidate bad or foolish policies, only unconstitutional ones." *Williams v. Morgan*, 478 F.3d 1316, 1324 (11th Cir. 2007). Whatever this court thinks of the wisdom of the government policy, it cannot substitute its judgment. Indeed, there may be some facial appeal to efficiency for allowing for the use of teleconferencing to satisfy the mandated informed consent requirement. However, that is not the question here. The relevant inquiry is whether the Guam legislature could conclude that in-person interaction provides *any* benefit over remote correspondence.

As discussed in the Defendants' opening brief, there are a variety of differences—including intangible ones—that make it reasonable for the legislature to prefer in-person counseling, *inter alia*: the privacy and seriousness of the setting; the reduction or elimination of distractions, the ability to perceive and

sense the entire array of non-verbal cues and communications, and assurances that the patient can hear and perceive the information being provided. During an in-person meeting, a person may not press "mute" if they simply desire not to hear something. The legislature could have reasonably concluded that the in-person requirement provides at least some benefit over videoconferencing, even where a particular provider chooses not to live in Guam.

The Plaintiffs make no response to the Defendants' observation that the courts have previously noted the inherent and self-evident difference between real life and videos. Appellant's Br. at 25-27 (citing *Maryland v. Craig*, 497 U.S. 836, 845 (1990) and others). Courts have long preferred in-person attendance at trial, *see, e.g.*, *In re Vioxx Prods. Liability Litigation*, 439 F.Supp.2d 640, 644 (E.D. La. 2006) ("Moreover, the Court notes live, in-person testimony is optimal for trial testimony, because "[t]he very ceremony of trial and the presence of the fact-finder may exert a powerful force for truthtelling. The opportunity to judge the demeanor a witness face-to-face is accorded great value in our tradition." (citations omitted)). Even the Supreme Court long ago observed: "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947) (superseded by statute on other grounds as stated in *Am. Dredging Co. v. Miller*,

510 U.S. 443, 444 (1994)). Courts have also found that other statutes, such as those governing parole hearings, reasonably require in-person attendance. *See Terrell v. United States*, 564 F.3d 442, 453 (6th Cir. 2009) ("Put differently, when we hold that the statute requires an in-person hearing, we mean that the statute unambiguously requires particular characteristics in a hearing which videoconferencing does not have.").

> And even in the era of *Casey*, the Seventh Circuit observed,

> Personal contact is vital to any question of informed consent, for it allows the medical expert the best opportunity to observe the verbal and nonverbal behavior of the patient by focusing on her reactions and responses to questions, her facial expressions, attitude, tone of voice, eye contact, posture and body movements, confused or nervous speech patterns and countless other factors that are indiscernible by telephone but may reveal incongruities between what the patient says and what she actually feels or believes.

*Newman*, 305 F.3d at 703 (7th Cir. 2002). For certain, it is the legislature that is in the best position—for purposes of public policy—to determine the importance and necessity of in-person informed consent, including in ascertaining whether the patient's consent is truly her own. The in-person requirement, for example, can help identify and ameliorate the most serious consequences of domestic abuse situations. *Casey*, 505 U.S. at 897 (noting special consideration for "victims of abuse."); *cf. Georgia v. Randolph*, 547 U.S. 103, 139 (2006) (Roberts, C.J., *dissenting*). There are simply certain situations that escape observation even when high-quality videoconferencing technology is used.

22

If Plaintiffs believe that technology has advanced far enough to render videoconferencing sufficient to accomplish the law's mandates, they are free to take their concerns to the legislature and seek change. However, until that time, it is disingenuous to argue that there are no differences between in-person and videoconferencing interactions—or at least to argue that the Constitution entitles them to choose videoconferencing when it is proscribed by law.

The goal of the Guam law is to ensure that a patient "receives complete and accurate information material to her decision of whether to undergo an abortion." Guam P.L. 31-235 § 1. The Guam Legislature reasonably concluded that an in-person consultation was at least in some way preferable to video-conferencing. Any change to this policy choice must come from action of the Guam Legislature, not an opinion from the federal courts.

### D. The Guam law is a rational regulation that is not grounded in any form of illegal and impermissible bias.

In furtherance of their claim, Plaintiffs complain that the Guam law "has singled out a form of health care predominately sought by women." Appellee's Br. at 53. The U.S. Supreme Court squarely foreclosed this as a basis for a constitutional challenge to a regulation of abortion procedures. In *Dobbs*, the Supreme Court stated: "The regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny unless the regulation is a "mere pretex[t] designed to effect an invidious discrimination

against members of one sex or the other." And as the Court has stated, the "goal of preventing abortion" does not constitute "invidiously discriminatory animus" against women. 142 S.Ct. at 2245-46 (citations omitted).

First, Plaintiffs' discrimination allegations are not supported by the record or the law. The requirement presumably would apply to all individuals seeking an abortion. It merely happens that individuals born female are the only ones that can get pregnant. Imparting the importance and gravity of the decision to abort does not rise to the level of "invidious discrimination." *Dobbs*, 142 S.Ct. at 2246. The goal of the law is to ensure that a patient understands the procedure and to offer information on alternatives (which may further the goal of promoting fetal life and preventing abortion). Even the Plaintiffs do not go so far as to allege invidious discrimination, they merely complain that Guam law "smacks of gender stereotypes." Appellee's Br. at 53. This simply falls far short.

Second, the law does not single out abortion for in-person requirements. Guam law also requires those individuals seeking a medical cannabis prescription to appear in person at the Department of Public Health and Social Services and verify their eligibility. 10 GCA § 122526. Similarly, federal law typically requires individuals obtaining certain prescriptions for pain medications to attend at least

one in person visit. 21 U.S.C. § 829(e)(2)(A)(i).[3] The law appears to require extra consideration of decisions involving questions of "profound moral and social importance"—*e.g.*, decisions involving drugs and termination of "potential life" which fit into that category. *Dobbs*, 142 S.Ct. at 2250.

Finally, even if this Court believes Guam has 'singled out' abortion, there is a rational basis for treating abortion differently as it is not the same as other medical procedures. *See Casey*, 505 U.S. at 852 ("Abortion is a unique act."). Abortion stands alone as involving not only the life and health of the patient, but also the preservation or cessation of "potential life." *See Roe*, 410 U.S. at 159 (referring to abortion as "inherently different."); *Dobbs*, 142 S.Ct. at 2258 ("Abortion destroys what [*Roe* and *Casey*] call "potential life" and what the law at issue in this case regards as the life of an "unborn human being."). The state has a "profound interest" in the promotion of fetal life and may enact measures that further instill the gravity and importance of the decision whether to terminate it or preserve it. *Casey*, 505 U.S. at 878. The abortion procedure or event implicates the state's interest in promoting fetal life in a way incomparable to any other medical procedure or situation. The Guam Legislature acts reasonably even if it regulates

---

[3] Defendants acknowledge that this requirement was *temporarily* suspended by the Drug Enforcement Administration, pursuant to 21 U.S.C. § 802(54)(D), during the public health emergency caused by COVID-19.

abortion slightly differently than other procedures[4]—including requiring a little more informed consent and time to contemplate the importance and impact of a decision to obtain an abortion.

**E. In the event this court does not reverse the preliminary injunction outright, Plaintiffs admission that the "undue burden" standard no longer applies warrants reversal and remand for reconsideration in light of *Dobbs*.**

Plaintiffs admit that *Dobbs* mandates rational basis review and that "the analysis conducted by the District Court is no longer applicable." Appellee's Br. at 1. Given this admission, the court should either reverse the preliminary injunction based on the analysis above or reverse and remand to the District Court for reconsideration in light of *Dobbs* consistent with Defendants' prior motion for summary reversal.

## CONCLUSION

"Men and women of good conscience can disagree, and we suppose some always shall disagree, about the profound moral and spiritual implications of

---

[4] In setting up an Equal Protection claim, Plaintiffs define the relevant class as all telemedicine providers. Appellee's Br. at 48-55. Given the unique status of abortion, recognized even in *Roe*, the appropriate class can be defined only as those physicians performing abortions. The Supreme Court in *Dobbs* squarely foreclosed the type of Equal Protection Clause claim Plaintiffs are now advancing. *Dobbs*, 142 S.Ct. at 2235 ("Others have suggested that support can be found in the Fourteenth Amendment's Equal Protection Clause, but that theory is squarely foreclosed by the Court's precedents, which establish that a State's regulation of abortion is not a sex-based classification and is thus not subject to the heightened scrutiny that applies to such classifications.").

terminating a pregnancy, even in its earliest stage." *Casey*, 505 U.S. at 850. "It is conventional constitutional doctrine that where reasonable people disagree the government can adopt one position or the other." *Id.* at 851. While *Casey* resolved the ultimate question in favor of the right to an abortion, it also explicitly upheld a law strikingly similar to the one at issue in this case. And now, since *Dobbs* has overruled *Roe* and *Casey*'s holding that there is a constitutional right to an abortion, the law dictates clearly that Guam's modest and reasonable in-person informed consent requirement is permitted to stand.

This Court should **REVERSE** the preliminary injunction of the District Court of Guam.

Respectfully submitted November 9, 2022 (Pacific Time Zone).

**LEEVIN TAITANO CAMACHO**
Attorney General of Guam

_____/s/ *Jordan Lawrence Pauluhn*___
**JORDAN LAWRENCE PAULUHN**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed and served the foregoing document with the Clerk of Court for the Ninth Circuit Court of Appeals using the CM/ECF system.

This 9th day of November 2022 (Pacific Time Zone).

/s/ *Jordan Lawrence Pauluhn*
**JORDAN LAWRENCE PAULUHN**
Assistant Attorney General

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s):**  No. 21-16559

I am the attorney or self-represented party.

**This brief contains 6509 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**x**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   s/ Jordan Lawrence Pauluhn        **Date**        11/09/2022 (PT)
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                                      *Rev. 12/01/18*